UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY ROZEWSKI,

       Plaintiff,

                                                  Case No. 10-13035

v.

                                               HONORABLE DENISE PAGE HOOD

JEFFREY WEBER, MICHAEL J.
OLCESE, LAW FIRM OF WEBER &
OLCESE, and ROBERT J. REZNICK,

       Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND
ORDER SETTING FINAL PRETRIAL AND TRIAL DATES**

## I.    BACKGROUND/FACTS

On July 31, 2010, Plaintiff Tiffany Rozewski ("Rozewski") filed the instant suit against

Defendants Jeffrey Weber ("Weber"), Michael Olcese ("Olcese"), Weber and Olcese, PLC ("Weber

and Olcese"), and Robert Reznick ("Reznick") alleging: Violation of Civil Rights under 42 U.S.C.

§ 1983 (Count I); Conspiracy under State Law (Count II); Trespass (Count III); Fraud (Count IV);

Abuse of Process (Count V); Intentional Infliction of Emotional Distress (Count VI); Intrusion

(Count VII); Conversion of Money (Count VIII); and, Extortion and Threats (Count IX). The Weber

and Olcese law firm obtained Orders to Seize Property and engaged Reznick to execute the Orders.

(Comp., ¶ 1) Rozewski generally claims that Weber and Olcese conspired with Reznick to use

"terroristic and abusive conduct in executing Weber and Olcese Orders to Seize Property" despite

numerous complaints from Weber and Olcese employees and other judgment debtors. (Comp., ¶

2) Upon stipulation by the parties, the Court entered an Order Dismissing Counts II through IX of

Plaintiff's Complaint on May 31, 2011. The only remaining count in the Complaint is Count I,

Violation of Civil Rights under 42 U.S.C. § 1983.

A Default Judgment was entered by the 37th District Court in Warren, Michigan, against Rozewski in the amount of $941.26 on behalf of Weber and Olcese's client, People's State Bank. (Motion, Ex. 4)  After submitting the standard request for an Order to Seize Property to satisfy the Default Judgment, the court entered the Order on May 24, 2007.  (Motion, Ex. 5)  The Order to Seize Property authorized a sheriff, deputy sheriff, or court officer to seize "personal property ... includ[ing], but not limited to ... money, wherever located" to satisfy the judgment.  (Motion, Ex. 5) Reznick was sent to the home by the Weber and Olcese law firm to execute an Order to Seize Property following an entry of civil judgment against Rozewski.  (Comp., ¶ 13)

Reznick, accompanied by two other men, went to the home of Rozewski in Warren, Michigan on August 1, 2007 at about 10:00 p.m. (Comp., ¶ 12) Rozewski's sister told her that there was "a police officer wanting to talk to her."  (Rozewski Dep., pp. 15, 22)  Rozewski went outside through the house's side door and saw Reznick and another man standing in the driveway. (Rozewski Dep., p. 22)  Reznick was dressed in casual clothes and told Rozewski, "My name is Robert Reznick.  I'm a deputy sheriff here to collect a debt." (Rozewski Dep., p. 23)  Reznick was holding up the Request and Order to Seize Property. (Rozewski Dep., p. 24) Reznick told Rozewski that if she did not pay him $1,200 to satisfy the debt then he would seize her property, including her 1997 Buick Regal.  (Rozewski Dep., pp. 28-30)

Rozewski then told Reznick she was going inside the house to get her mother, shutting the door behind her.  (Rozewski Dep., pp. 26-27)  While her mother was coming up the stairs from the basement, Rozewski heard the side door open and Reznick and his companion came into the home. (Rozewski Dep., p. 27) Rozewski asked Reznick what he was doing in the house and he responded,

"I'm not leaving until you pay me my debt." (Rozewski Dep., p. 28) Rozewski told Reznick she did not have that kind of money and he responded by telling her to start calling friends and family to get the money. (Rozewski Dep., p. 32) When Rozewski asked Reznick what he was doing in the house, he responded by going back outside into the backyard. (Rozewski Dep., p. 34)

Rozewski went outside to make some telephone calls. She testified that Reznick kept following her around while she was making the calls. (Rozewski Dep., p. 45) Rozewski called the Warren Police Department who responded to the home. (Rozewski Dep., pp. 40-41) When the officers arrived, Reznick walked up to and spoke to the officers, and before Rozewski could speak with the officers, the officers drove away. (Rozewski Dep., p. 42)

Rozewski's father and sister each had $500 and her mother had $100 in cash. (Rozewski Dep., pp. 34-35, 37) Rozewski was still short of the amount and asked Reznick if she could sign her $70 paycheck over to him and Reznick told her he only accepted cash. (Rozewski Dep., p. 37) Reznick told her to cash the check at a party store, which she did and gave Reznick the money. (Rozewski Dep., pp. 37-39) Rozewski signed a receipt provided by Reznick. (Rozewski Dep., p. 39) Reznick was at her home for one and one half to two hours. (Rozewski Dep., p. 40) Rozewski testified that he did not assault or threaten Rozewski with any harm. (Rozewski Dep., p. 52)

Rozewski called the Warren Police Department the next day to make sure she did not give her money to "some strange man" and the Police Department told her what Reznick did "was okay." (Rozewski Dep., p. 46) Rozewski did not make any other complaints about the incident or do any further investigation. (Rozewski Dep., p. 46) Rozewski had no further contact with Reznick after August 1, 2007. (Rozewski Dep., p. 54)

In 2009, Rozewski received a letter from her current counsel, James Shaw, who inquired if

a court officer named Robert Reznick had come to her home and that "if you feel like you were violated or treated uncourteously in any way, to please contact the law office." (Rozewski Dep., pp. 48-49) Rozewski testified that she had never had any contact with anyone at Weber and Olcese but that she was suing them because "they were the people who sent him to do this." (Rozewski Dep., pp. 56-57) Rozewski filed the instant suit after contacting Mr. Shaw's office.

On January 3, 2011, Weber, Olcese and the Weber and Olcese firm filed the instant Motion for Summary Judgment. Rozewski filed a two-page response to the motion, without an accompanying, on April 25, 2011. On May 11, 2011, a reply was filed to the response. A hearing was held on the matter and Rozewski's counsel was allowed to file a late brief.

## II.    ANALYSIS

### A.    Summary Judgment Standard

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who

4

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

> **B.      42 U.S.C. § 1983 Claim/Vicarious Liability by Weber, Olcese and Weber and Olcese and Conspiracy**

The Weber and Olcese Defendants argue that they cannot be held liable under 42 U.S.C. § 1983 for the actions of Reznick.  They claim that Rozewski's counsel has filed several lawsuits against the firm and Reznick in this District and that courts, including the Honorable John Corbett O'Meara, have held that the Weber and Olcese Defendants could not be held liable for Reznick's actions under any theory, including conspiracy.  (Defendants' Br., Ex. 7, D, *Bairactaris v. Weber,* Case No. 10-10983, Nov. 4, 2010 Opinion and Order Granting Summary Judgment).  The Weber and Olcese Defendants argue that Rozewski has no evidence as to any alleged conspiracy between Reznick and the Weber and Olcese Defendants but that Rozewski's counsel relies on the exact same "evidence" he has presented in other cases.

In response, Rozewski argues that there is sufficient evidence regarding the conspiracy between the Weber and Olcese Defendants and Reznick to conclude there are genuine issues of material fact.  Rozewski argues that Judge O'Meara's decision in dismissing the Weber and Olcese Defendants was erroneous, unsound and improper and that this Court should make an independent determination regarding whether or not summary judgment is proper in this case.

The Weber and Olcese Defendants replied that the Court should not consider Rozewski's

response since it was not filed within 21 days after service of the motion, but more than three months after the summary judgment motion was filed. In addition, Rozewski did not file a brief with her response to the motion. The Court allowed Rozewski to filed a brief after the hearing was held on the matter.

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-94 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

Rozewski attempts to hold the Weber and Olcese Defendants liable under a vicarious liability or *respondeat superior* theory in that they obtained the services of Reznick to execute the Order to Seize Property. Such a theory is generally applied to municipalities although it has been extended to hold liable a private corporation in certain circumstances. *See Street v. Corrections Corp. of Am.,* 102 F.3d 810, 818 (6th Cir. 1996). In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality

cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee,* 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690. The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

The Sixth Circuit recognizes three tests for determining whether or not conduct by private actors, like a law firm, is "fairly attributable to the state" under § 1983: the public function test, the state compulsion test, and the nexus test. *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir. 1995); *Lansing v. City of Memphis,* 202 F.3d 821, 829-30 (6th Cir. 2000). The "nexus test" is the only relevant test at issue. The "public function" test is not applicable because there is no allegation that the defendants have taken over a traditionally state function, like operation of an election or prison.

7

The "state compulsion" test is also inapplicable because there is no suggestion that the state somehow put the defendants up to the argument they made in the state courts. *Ellison,* 48 F.3d at 195. Under nexus theory, a plaintiff must plead "a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Id.* For private litigants accused of acting "under color of law," a court must consider "the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621-22 (1991). While judicial actions are state actions, steps taken by the litigants to obtain a ruling from a court are generally not deemed to be state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 54 (1999); *Polk County v. Dodson,* 454 U.S. 312, 324-35 (1981)(holding that public defenders whose role is limited to performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding is not a state actor under § 1983).

The Court must first determine whether the Weber and Olcese Defendants, as private entities under the nexus theory had a sufficiently close relationship (i.e., through state regulation or contract) with the State of Michigan so that the action taken by the Weber and Olcese Defendants may be attributed to the state. *Ellison,* 48 F.3d at 195. The Weber and Olcese Defendants were acting as counsel on behalf of a certain client when a Default Judgment and the Order to Seize Property were obtained with the state court. There are no allegations by Rozewski that the action by the Weber and Olcese Defendants in obtaining such a judgment and order constitute a "state action." Rozewski claims that the action of *obtaining Reznick's services to enforce* the Order to Seize Property constitutes a state action. However, Rozewski has not submitted any legal authority that a law

8

firm's action to obtain services to enforce an Order to Seize Property constitutes a "state action." Michigan law allows a party to take steps to satisfy a judgment. No state or municipality decision is involved in obtaining such services, other than the applicable statute. There is no evidence that apart from the statutory fees for the services charged by Reznick, the Weber and Olcese Defendants have any other employment or contractual relationship with Reznick. The Weber and Olcese Defendants cannot be held liable under a vicarious liability or *respondeat superior* theory for any actions by Reznick since no state action existed when the Weber and Olcese Defendants obtained the services of Reznick to satisfy the judgment. A § 1983 action cannot lie against a municipality or, in this case, the law firm or its principals, under the theory of *respondeat superior* since the Weber and Olcese Defendants were not executing a policy or custom adopted by a state or municipality. *Monell*, 436 U.S. at 695. The Weber and Olcese Defendants' actions of obtaining Reznick's services cannot be connected to any state or municipal policy or custom.

In addition, the individual Defendants, Weber and Olcese, also cannot be held liable under a supervisory liability theory in a § 1983 action because no such action is available for failure to prevent misconduct, absent a showing of direct responsibility by the supervisor for that improper action. *Rizzo v. Goode,* 423 U.S. 362-373-77 (1976); *Dunn v. State of Tennessee,* 697 F.2d 121, 128 (1982). The § 1983 claim against the Weber and Olcese Defendants is dismissed.

## III.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Weber and Olcese Defendants' Motion for Summary Judgment **(Doc. No. 13, filed January 3, 2011)** is GRANTED.

IT IS FURTHER ORDERED that Defendants Jeffrey Weber, Michael J. Olcese, and the Law

9

Firm of Weber & Olcese are DISMISSED with prejudice.  Defendant Robert J. Reznick only

remains in this lawsuit.

IT IS FURTHER ORDERED that the following schedule governs this matter:

• Final Pretrial Conference is set for **Monday September 12, 2011, 3:00 p.m.**  All parties with full settlement authority must attend the conference.

• Plaintiff and Defendant Reznick must submit a proposed ***Joint*** Final Pretrial Order pursuant to E.D. Mich. LR 16.2 by **September 7, 2011**.

• The Trial Date is set for **Tuesday, October 4, 2011, 9:00 a.m.**

s/Denise Page Hood
United States District Judge

Dated:  August 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

10